[No. 38805.    Department Two.    April 6, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. HENRY EDWARD KELTER, *Appellant*.*

*Kroum & Bass* and *Gary F. Bass*, for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Neal J. Shulman*, for respondent.

HUNTER, J.—The defendant, Henry Edward Kelter, has appealed from his conviction on two counts of negligent homicide.

The accident, from which these charges emanate, occurred August 14, 1965 in Seattle and resulted from the collision of two vehicles at the intersection of 40th N. E. and Sandpoint Way. The police officers, dispatched to the

*Reported in 426 P.2d 500.

scene, learned from the defendant, the sole survivor, that he was the driver of one of the cars. They also discovered that the defendant and the driver of another vehicle had been "drag racing" down Sandpoint Way toward the University District; that the collision occurred as the driver of a third car attempted to cross this arterial. The other racing vehicle was never found.

The day following the accident, an officer investigating the two fatalities interviewed the defendant in his room at University Hospital, where he was recovering from his injuries. During this interrogation, the defendant at first estimated his speed at 30 to 35 miles per hour; however, when told by the officer that witnesses had stated two of the cars were drag racing, he admitted that he had been traveling at 60 to 65 miles per hour at the time of the collision. The officer testified to this fact at the subsequent pretrial hearing and trial of the defendant.

By his sole assignment of error, the defendant contends that the trial court erred in admitting his pretrial admissions in evidence. He argues that the rules announced by the United States Supreme Court in *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 Sup. Ct. 1758 (1964) and *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (1966) apply to the interrogation that occurred in University Hospital; that since he was not, at that time, advised of his constitutional rights, the admissions elicited should have been suppressed. The defendant alternatively argues that if hospital confinement is not termed "custodial" as to fall within the *Escobedo-Miranda* rule, then that rule, as adopted by this court, should be extended to noncustodial interrogations where a person, suspected of a crime, is exposed to possible self-incrimination.

We note initially that we are only concerned on this appeal with the rule as announced in *Escobedo v. Illinois, supra,* for the holding of the United States Supreme Court in *Miranda, supra,* is not completely applicable; the defendant, in the instant case, having been tried before the rendition of the *Miranda* opinion on June 13, 1966. See

*Johnson v. New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882, 86 Sup. Ct. 1772 (1966).

■ The exclusionary rule announced in *Escobedo* is as follows, Justice Goldberg speaking for the court:

[W]here, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, *the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer,* and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied "the Assistance of Counsel" in violation of the Sixth Amendment to the Constitution as "made obligatory upon the States by the Fourteenth Amendment," *Gideon v. Wainright,* 372 U. S., at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial. (Italics ours.) pp. 490, 491.

Custodial interrogation is an essential element of the *Escobedo* exclusionary rule; for in *Miranda,* the court reasserted its tenets by stating:

The entire thrust of police interrogation there [*Escobedo*], as in all the cases today, was to put the defendant in such an emotional state as to impair his capacity for rational judgment. The abdication of the constitutional privilege—the choice on his part to speak to the police—was not made knowingly or competently because of the failure to apprise him of his rights; *the compelling atmosphere of the in-custody interrogation, and not an independent decision on his part, caused the defendant to speak.* (Italics ours.) p. 465.

In the present case, there was no compelling atmosphere of in-custody interrogation in the questioning of the defendant in his hospital room; and no competent evidence was offered to show that the defendant was not in full possession of his faculties at this time; nor had the defendant been placed under arrest or otherwise restrained by the police in any manner. Under these circumstances, the requirement in *Escobedo*—that no statement taken from a

suspect shall be used in evidence against him unless he has first been warned of his constitutional rights—does not apply.

   ■   As to the alternative argument that we should extend the *Escobedo* rule to noncustodial interrogations, we see no necessity to do so under the facts of this case. The real question here, as announced in *Malloy v. Hogan*, 378 U.S. 1, 12 L. Ed. 2d 653, 84 Sup. Ct. 1489 (1964), is whether the noncustodial interrogation of the defendant, which elicited incriminatory admissions by him, was of such a nature as was likely to exert such pressure upon the individual as to disable him from making a free and rational choice whether to speak with the police officer. The United States Supreme Court in *Malloy* stated that the constitutional inquiry is

> whether the confession was "free and voluntary: that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, *nor by the exertion of any improper influence.* . . . " (Italics ours.) p. 7.

The holdings in *Escobedo* and *Miranda* are but further implications of this basic proposition in *Malloy*, as it applies to in-custody interrogations. *Miranda, supra,* at page 465. It is our view that the statements elicited by the police from the defendant Kelter, were voluntarily given by him under circumstances where his volition was not impaired; and where he was not otherwise disabled from making a free and rational choice. The trial court, by finding that these pretrial admissions were voluntarily made, properly admitted the statements into evidence.

The judgment of the trial court and sentence entered thereon are affirmed.

Finley, C. J., Donworth and Hamilton, JJ., and Denney, J. Pro Tem., concur.